UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WEIQIANG TAN

                                         Plaintiff,                Civil Action No.:
                                                                          25-3212

               -against-

HYUNDAI MARINE & FIRE INSURANCE CO., LTD       **COMPLAINT WITH**
(U.S. BRANCH),                                                  **JURY DEMAND**

                                          Defendant.
-------------------------------------------------------------------X

       Plaintiff WEIQIANG TAN by his attorneys, AGULNICK KREMIN, P.C, for his complaint against Defendant HYUNDAI MARINE & FIRE INSURANCE CO., LTD. (U.S. BRANCH), alleges as follows:

## THE PARTIES

       1.      Plaintiff WEIQIANG TAN ("Plaintiff" or "Tan"), is a natural person residing at 792 E. 37th Street, Brooklyn, New York 11210.

       2.      Defendant HYUNDAI MARINE & FIRE INSURANCE CO., LTD. (U.S. BRANCH) ("Hyundai" or "Defendant") is a foreign insurance corporation with its principal offices located at 300 Sylvan Avenue, 2nd Floor, Suite 105, Englewood Cliffs, New Jersey 07632, and is licensed to engage in the business of insurance within the State of New York.

## JURISDICTION AND VENUE

       3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this is a civil action between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the property that is the subject of this action is situated in this District, and a substantial part of the events giving rise to the claim occurred herein.

## **RELEVANT FACTS**

5. Plaintiff Tan is the owner of the property located at 792 E. 37th Street, Brooklyn, New York 11210 (the "Property"), which is legally classified as a one-family dwelling, and which contains a singular dwelling with a finished basement styled as a "rec room".

6. On or about August 16, 2018 (the "Application Date"), Tan applied for insurance coverage for the Property with Hyundai, submitting an application in which he accurately represented the Property as a one-family dwelling based on its legal designation, its physical construct as a single-family dwelling with finished basement or "rec room", and his reasonable understanding of the application questions.

7. The insurance application included a question asking for the "No. of Families," to which Tan responded "1," consistent with the Property's legal classification, and also consistent with its physical construct as a single-family dwelling with finished basement or "rec room".

8. The basement/"rec room" was not at any time a separate legal dwelling.

9. The application also contained separate questions for "No. of Apts." and "No. of Rooms," indicating that these questions pertain to the physical construct of the Property rather than its legal designation.

10. As of the Application Date, the finished basement/ "rec room" was indisputably used by the household solely for recreation consistent with its physical construct as a finished basement/"rec room" and accessory to the dwelling for members of the household.

11. Hyundai issued an insurance policy to Tan, bearing policy number DPNY2018100294-23 (the "Policy"), which provided coverage for the Property against various risks, including physical loss from fire damage. The Policy was signed by Hyundai's authorized agents and was in effect on August 29, 2024, the date of the loss.

12. Hyundai renewed the Policy multiple times, with the most recent policy period being October 16, 2023, to October 16, 2024, without raising any concerns about the Property's configuration or Tan's representations, despite having access to public records and prior listings disclosing the basement's features.

13. Hyundai renewed the Policy in October 2023, and accepted and retained premiums in connection thereto, a date long **after** Hyundai indisputably had the information it later relied upon to rescind the Policy, including the physical construct of the Property, creating but one ground for estoppel against rescission under well settled law.

14. On August 29, 2024, while the Policy was in full force and effect, an explosion and fire occurred at a neighboring property, causing significant damage to the Property, rendering it uninhabitable and requiring extensive repairs.

15. Tan promptly notified Hyundai of the loss and filed a claim under the Policy for the damages sustained, complying with all conditions precedent under the Policy.

16. On October 10, 2024, Hyundai issued a reservation of rights letter, requesting various documents and information from Tan regarding the Property and its occupants, but clearly indicating that Hyundai had the information that it later relied upon to rescind the Policy.

17. Tan complied fully with Hyundai's requests in early November 2024, providing documentation and statements, including that the Property is owner-occupied and at the time of the Loss used by his family, with his parents sleeping in a finished basement/ "rec room" due to

his father's health condition. The basement was at all times an open-concept space styled as a "rec room" with an accessory kitchenette (without functional/connected stove) and a bed, but no partition walls, and containing only the usual egress for that type of space.

18. Despite having the information it relied upon to rescind as early as August, 2024, and by early November, 2024, the latest, on May 7, 2025, approximately eight months after the claim was filed, Hyundai rescinded the Policy (the "Rescission"), declaring it void *ab initio*, and denied Tan's claim, alleging that Tan misrepresented the Property as a one-family dwelling on the insurance application, claiming it was configured as a two-family dwelling with an illegal basement unit, a fact which is disputed.

19. In other words, the Rescission alleges that the Plaintiff misrepresented the "No. Families" on the application for insurance at the inception of the Policy on Application Date in 2018.

20. From the outset, the Rescission is disturbing, as the factual basis articulated in the Rescission indicates Hyundai is seemingly unaware that New York Insurance Law § 3105 defines representation as following:

> (a) A representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof.

21. Alternatively, Hyundai completely disregarded in bad faith the fact that the finished basement/ "rec room" was not used as sleeping quarters for any member of the family, or anyone else, at the Application Date and for years afterwards.

22. Hyundai completely disregarded the fact that the use of the Property's finished basement/ "rec room" by Tan's parents began approximately three years prior to the Loss, and only following a medical crisis and to address logistical issues tending to the ailing family member.

23. At no time did Tan conceal or misstate the nature of the Property or its occupancy as of the Application Date, and every statement as to past or present fact as of the application date was entirely true and correct.

24. The presence of an accessory kitchenette in a finished basement/"rec room" used by immediate family members, all in the same household, does not constitute a separate dwelling or family unit under New York law, nor is it material to the risk insured.

25. That neither at the time of the Application Date nor at any time after has any space at the Property been rented to anyone and has always been occupied by members of the same household.

26. Furthermore, Hyundai had in its possession all relevant facts, including the configuration and use of the basement space, as early as October 2023, and no later than November 2024, yet waited until May 2025, approximately eight months after the claim was filed, to assert rescission. This delay is indicative of bad faith and constitutes a waiver and/or estoppel of Hyundai's right to rescind.

27. Hyundai's post-claim rescission is further invalid because it is based on information that was not only known to or obtainable by Hyundai at the time of underwriting, but which was ultimately immaterial, as the Property has always been used and classified as a one-family dwelling consistent with the representations made by Tan.

28. Accordingly, Hyundai's rescission is without legal or factual basis and for Hyundai to maintain its position of rescission despite the foregoing is bad faith, malicious, and abhorrent conduct, *res ipsa loguitur.*

29. In addition, and although rendered academic by the foregoing, Hyundai's rescission relies on a strained and unreasonable interpretation of the term "No. of Families," asserting that

the presence of a finished basement or "rec room" with an accessory kitchen constitutes a separate family unit, despite the Property's legal classification as a one-family dwelling and its use by Tan's immediate family as an extension of the single family dwelling and household, which it indeed is.

30. An insurance application is an invitation to enter a legal relationship, and as such, the insured may reasonably consider the legalities of the property when responding to questions about its classification.

31. The existence of distinct questions regarding "No. of Apts." and "No. of Rooms" on the application further supports the reasonable conclusion that "No. of Families" refers to the Property's legal designation, while "No. of Apts." and "No. of Rooms" address the physical construct.

32. Regardless of the fact that there was indisputably no misrepresentation to begin with, this distinction reinforces Tan's interpretation that his response of "1" for "No. of Families" was accurate based on the Property's legal status as a one-family dwelling, in addition to being consistent with the fact that the Property was always a single-family dwelling with finished basement or "rec room".

33. The question "No. of Families" is otherwise inherently ambiguous even if, *arguendo,* Tan's parents were sleeping in the finished basement/"rec room" as of the Application Date, as it is not defined in the application and is subject to multiple reasonable interpretations, including the Property's legal status rather than the sleeping quarters of its household members or physical layout.

34. The ambiguity of the question "No. of Families" is exacerbated by the existence of separate inquiries about "No. of Apts." and "No. of Rooms", which logically underscore that "No. of Families" in this context is intended to address the legal classification, not the physical features

of the Property, and "No. of Apts." and "No. of Rooms" refers to physical construct, and to suggest otherwise is to suggest that the application contained three duplicative questions inquiring the same thing which would defy credulity.

35. In addition, ambiguities exist in that it is reasonable for Tan or a reasonable policyholder to believe that a single-family dwelling with a finished basement or "rec room", whether or not containing a functional kitchen, is a "1 family dwelling", regardless of what that term means or what the question was precisely asking.

36. Tan disputes Hyundai's characterization. The Property is a one-family dwelling, legally classified as such, with a finished basement/"rec room" used by immediate family members all within the same household of the named insured.

37. The presence of an accessory kitchen in the basement does not transform it into a separate dwelling unit, even if it did have a fully functional kitchen, as it was not rented out, and was used only by members of the household for sleeping.

38. Moreover, regardless of the fact that Tan's parents first started using the finished basement/"rec room" for sleeping years after the Application Date, the decision for Tan and his household to allow their ailing patriarch to relocate downstairs to the finished basement/"rec room" so as to address logistics following a medical crisis did not transform the one-family dwelling into a two-family dwelling. To suggest otherwise is to consciously ignore the fact that most reasonable consumers would reasonably agree to the contrary interpretation.

39. Under New York law, a one-family dwelling may include a finished basement with an accessory kitchen, provided it is not used as a separate rental unit which this finished basement/"rec room" never was.

40. As of the Application Date, the finished basement/"rec room" was just that, based upon both usage and physical construct, disposing of the issues entirely.

41. In any event, if Hyundai maintains otherwise, an ambiguity arises, *inter alia,* as it would clearly be unreasonable for Hyundai to assert that if hypothetically one of Tan's minor children chose to relocate their bed to their finished basement/"rec room", while continuing to be a member of their household, the finished basement/"rec room" would morph the Property into a two-family dwelling.

42. Taking the aforesaid hypothetical into consideration, logic then requires the conclusion that the only difference between one of Tan's minor children and Tan's parents choosing to relocate to relocate their bed to their finished basement/"rec room", while continuing to be a member of the same household is the age and relationship to Tan.

43. When considering the respective relationship of Tan's child and Tan's elderly parents, they both are blood relation, they both are members of the same household with free access and reign of the rest of the house and its amenities, and they both are supported both financially, physically, and emotionally by Tan and his household.

44. It follows that the only variable is age, and it would be unreasonable for a one-family dwelling to morph into a two-family dwelling by virtue of the age of the party who opted to sleep in the finished basement/"rec room".

45. Logic thus requires the conclusion that the use of the finished basement/"rec room" by a member of the family in the same household does not change the nature of the Property from a one-family to a two-family.

46. Hyundai's interpretation of the finished basement/"rec room" within which no person slept for years after the Application Date, and used for sleeping by Tan's parents years after

the Application Date, who are part of his household, and which was not rented out or used as a separate dwelling, is bad faith and unreasonable.

47. Hyundai is also well aware that accessory kitchens are permitted as an extension of the dwelling space, and are common in single family homes for religious, cultural, and convenience purposes, the existence of which cannot reasonably, in of itself, ever change the nature of the Property, and thus cannot be considered as a dispositive factor in determining the nature of the Property.

48. The ambiguous question regarding "No. of Families" must be construed against Hyundai under these particular circumstances, the drafter of the application, and in favor of Tan's reasonable interpretation that it referred to the Property's legal designation, not its physical layout or incidental use by family members.

49. Furthermore, the Property's physical construct was always evident from public records, prior listings (e.g., a Zillow listing), and information available to Hyundai at the time of issuing and renewing the Policy since 2018.

50. Hyundai had multiple opportunities to inspect the Property or verify its physical construct during the years the Policy was in effect, prior to each renewal from 2018 to 2023, but failed to do so until after Tan filed his claim in 2024, by design.

51. By renewing the Policy annually without objection and accepting premiums, and by doing so in 2024, after having physically inspected the Property and having all information regarding its construct, Hyundai led Tan to believe that his coverage was valid and that his representations were acceptable, estopping Hyundai from now rescinding the Policy based on information it could have verified earlier.

52. In addition to the foregoing, Hyundai's delay in rescinding the Policy until May 7, 2025, despite having all relevant information some eight months prior, further prejudiced Tan, who relied on the continued coverage, incurred expenses, and made decisions based on the belief that his claim was being processed in good faith.

53. Even if there were a misrepresentation, it was not material, as the Property's use as a one-family dwelling with a finished basement occupied by family household members did not increase the risk of loss, and Hyundai has not and cannot demonstrate that it would have refused to issue the Policy had it known of the basement's configuration.

54. Hyundai's actions constitute a pattern of conduct whereby it issues policies based on ambiguous questions, renews them without proper investigation, and then rescinds coverage post-loss to avoid payment, a practice that misled Tan into believing he had valid coverage.

55. Hyundai's rescission is based on a bad faith misinterpretation of the facts and law, ignoring evidence provided by Tan, the Property's legal classification, the existence of one single family dwelling with a finished basement or "rec room") and the reasonable understanding of the application questions.

56. As a result of Hyundai's wrongful rescission and denial of the claim, Tan has suffered damages, including the loss of insurance coverage for the fire damage, additional living expenses, and other consequential damages.

## HYUNDAI'S OBLIGATIONS AND BAD FAITH ACTIONS

57. By reason of Hyundai's contractual undertaking to Tan pursuant to the Policy, Hyundai had the obligation to properly evaluate and pay claims thereunder to the extent of Tan's loss up to the limits prescribed by the Policy, and Hyundai owed and continues to

owe Tan the duties of good faith and fair dealing in connection with the parties' contractual relationship.

58. In accordance with the aforesaid duties of good faith and fair dealing, Hyundai was and is prohibited from undertaking any act which would have the effect of injuring or destroying Tan's rights deriving from his contractual relationship with Hyundai under the Policy.

59. Despite its duties of good faith and fair dealing, Hyundai denied the entirety of Tan's claim for the loss sustained as a result of the fire and otherwise disregarded Tan's actual rights under the Policy.

60. Moreover, by rescinding the Policy and declaring it void from inception, Hyundai is estopped from relying on any exclusions or conditions within the Policy to deny Tan's claim. Hyundai cannot simultaneously assert that the Policy is void while invoking its terms to avoid coverage.

61. By, inter alia, failing to pay Tan under the Policy to the full extent of his loss up to the limits of the Policy, despite legal precedent, statutory authority, and/or contractual obligations, Hyundai acted in bad faith and breached the duties of good faith and fair dealing owed to Tan.

62. Furthermore, Hyundai, and its agents, servants and/or employees, are governed by the regulations promulgated by the Superintendent of Insurance of the New York State Insurance Department as set forth in 11 NYCRR § 216, which Defendant violated.

63. Notwithstanding the foregoing, Hyundai continued to seek other grounds for denial based upon nothing other than a bad faith misinterpretation of the law, ignoring the Policy's language and the relevant facts, including but not limited to intentionally disregarding the fact that a reasonable and typical policyholder would believe there is an effective policy and coverage.

64. The aforesaid actions and Hyundai's modus operandi of seeking, from the outset of a claim being filed, any conceivable, although specious, basis for denial or avoidance of homeowner claims or parts thereof, have not only caused injury to Tan, but has the potential to harm the public at large.

65. Hyundai's actions toward Tan are part of a pattern and practice by Hyundai to sell insurance policies to property owners, and then subsequently take the position that, under its latest interpretation or based upon its purported investigation, there is or may be no coverage, effectively denying, reducing, or hindering the processing of legitimate claims.

66. Moreover, Hyundai's actions toward Tan are part of a pattern and practice by Hyundai to sell insurance policies to property owners and that if a loss occurs, claim representatives are encouraged to first find a basis to deny or minimize the claim, if possible, essentially treating their customers as fiscal enemies.

67. Hyundai regularly denies otherwise legitimate claims, setting forth frivolous grounds for the denial, that are contrary to fact, common sense, and causation.

68. Hyundai has failed to and/or refused to fully indemnify Tan for his total loss in an amount, with the outstanding amounts to be determined at the time of trial but believed to be in excess of seven hundred fifty thousand dollars ($750,000.00), although a demand has been made.

**AND AS FOR A FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT AGAINST HYUNDAI INSURANCE COMPANY**

69. Plaintiff repeats and re-alleges all paragraphs and allegations set forth in this complaint as if fully and completely set forth herein.

70. By, inter alia, failing to pay Tan under the Policy to the full extent of his loss, Hyundai has breached its obligation under the Policy with regard to the loss caused by explosion damage.

71. As a result of Defendant Hyundai's breach, Tan has been damaged in an amount to be determined at trial but believed to be in excess of seven hundred fifty thousand dollars ($750,000.00), plus appropriate interest of nine percent (9%) per annum from the date of the loss.

72. As a further result of Defendant Hyundai's breach and bad faith, Tan has suffered additional consequential damages in an amount to be determined at the time of trial, and pursuant to the *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of N.Y.* line of cases but believed to be in excess of two hundred and fifty thousand dollars ($250,000.00).

73. Consequential damages were at all times foreseeable and contemplated at the time of contracting, in that it is foreseeable that an insured will suffer additional losses when Hyundai denies a claim in bad faith.

74. It was both expected and foreseeable that Tan would sustain damages including the loss of use and enjoyment of the property, inability to make repairs thus lowering the value of the property, the need to procure alternative funds, opportunity costs, and additional living expenses.

## AND AS FOR A SECOND CAUSE OF ACTION: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

75. Plaintiff repeats and re-alleges all paragraphs and allegations set forth in this complaint as if fully and completely set forth herein.

76. Hyundai engaged in deceptive acts and practices in the conduct of its business, in violation of New York General Business Law § 349.

77. Hyundai has a pattern and practice of failing to perform actual underwriting or conduct underwriting inspections of properties, despite knowing that there are ambiguous questions on the insurance application, such as "No. of Families," including within the context of the other application questions pertaining to "No. of Apts." and "No. of Rooms," that it later uses to rescind policies when claims are made.

78. This intentional omission of underwriting inspections is calculated to allow Hyundai to issue policies without verifying the accuracy of the application information, only to rescind those policies based on alleged misrepresentations when a claim is filed.

79. Hyundai's deceptive acts and practices are consumer-oriented, as they are directed at the public at large. Hyundai sells insurance policies to numerous consumers in New York and engages in the same pattern of failing to conduct proper underwriting inspections and rescinding policies based on ambiguous application questions, thereby affecting a broad group of policyholders.

80. That the pattern and practice of Hyundai likely has the result of thousands of properties in New York being subject to rescission by Hyundai due to Hyundai deceptively claiming ignorance of properties by design.

81. Tan was injured by Hyundai's deceptive practices when his policy was rescinded based on an alleged misrepresentation that was neither a misrepresentation in the first place, not material, and based on an ambiguous question in the application.

82. That part and parcel to Hyundai's deceptive practice is to ignore facts as to the date of the application and instead to rescind based upon facts which existed long after the application and not otherwise excluded by the policy language, a scheme intended to defraud policyholders across the board when there is a loss.

83. As a direct proximate result of Hyundai's violation of GBL § 349, Tan has suffered damages, including but not limited to the loss of insurance coverage, the costs associated with the explosion loss, and other consequential damages.

84. Tan is entitled to recover his actual damages in an amount to be determined at trial but believed to be in the amount of seven hundred fifty thousand dollars ($750,000.00), statutory damages up to $1,000 per violation, attorneys' fees, and costs pursuant to GBL § 349.

**WHEREFORE**, Plaintiff **WEIQIANG TAN** demands judgment against Defendant **HYUNDAI MARINE & FIRE INSURANCE CO., LTD. (U.S. BRANCH)** as follows:

a. Under the FIRST CAUSE OF ACTION, damages in an amount to be determined at trial but believed to be in excess of seven hundred fifty thousand dollars ($750,000.00), plus appropriate interest, plus consequential damages directly resulting from Hyundai's breach in the amount of two hundred fifty thousand dollars ($250,000.00).

b. Under the SECOND CAUSE OF ACTION, actual damages in an amount to be determined at trial but believed to be in excess of seven hundred and fifty thousand dollars ($750,000.00), plus statutory damages up to $1,000 per violation, attorneys' fees, and costs pursuant to New York General Business Law § 349;

c. Awarding Plaintiff interest, the costs and disbursements of this action;

d. Such other and further relief as the Court deems just and proper.

e. **PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated:   Melville, New York
         June 9, 2025

Yours, etc.,

**AGULNICK KREMIN, P.C.**

By: _____

                                      Scott E. Agulnick, Esq. (SA1880)
*Attorneys for Plaintiff*
**WEIQIANG TAN**
510 Broadhollow Road, Suite 303
Melville, New York 11747
Tel: (718) 352- 4800
Fax: (718) 732- 2110

Defendant's Address:

HYUNDAI FIRE & MARINE INSURANCE CO.,
LTD (U.S. BRANCH)
300 Sylvan Avenue, 2nd Floor, Suite 105
Englewood Cliffs, NJ 07632